J-S26025-17 & J-S26026-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.G. | : | |
| | : | |
| | : | |
| | : | No. 1979 MDA 2016 |

Appeal from the Decree Entered November 9, 2016,
In the Court of Common Pleas of Cumberland County,
Orphans' Court Division at No(s) 91 ADOPT 2016

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.G. | : | |
| | : | |
| | : | |
| APPEAL OF: J.G. | : | |
| | : | |
| | : | |
| | : | No. 2012 MDA 2016 |

Appeal from the Decree Entered November 9, 2016,
In the Court of Common Pleas of Cumberland County,
Orphans' Court Division at No(s): 090 ADOPT-2016

| | | |
|---|---|---|
| IN THE ADOPTION OF: A.G., | : | IN THE SUPERIOR COURT OF |
| A MINOR, | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G. | : | |
| | : | |
| | : | |
| | : | No. 1989 MDA 2016 |

Appeal from the Order Entered November 9, 2016,
In the Court of Common Pleas of Cumberland County,
Juvenile Division, at No(s): CP-21-DP-0000164-2015

J-S26025-17 & J-S26026-17

IN THE ADOPTION OF: J.G., : IN THE SUPERIOR COURT OF
A MINOR, : PENNSYLVANIA
:
:
:
APPEAL OF: J.G. :
:
: No. 1990 MDA 2016

Appeal from the Order Entered November 9, 2016,
In the Court of Common Pleas of Cumberland County,
Juvenile Division, at No(s): CP-21-DP-0000051-2011

BEFORE: BOWES, J., DUBOW, J., and FITZGERALD, J.*

MEMORANDUM BY DUBOW, J.: **FILED MAY 25, 2017**

In these consolidated appeals, J.G., ("Father") challenges the Orders changing the permanency goal from reunification to adoption, and the final Decrees involuntarily terminating his parental rights to his son, J.G. (born February 2010), and his daughter, A.G., (born August 2014), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).[1] We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Father and A.B. ("Mother") are the natural parents of both children. Cumberland County Children and Youth ("the Agency") first became involved with J.G. in 2011 due to his parents' ongoing criminal activity and Mother's heroin addiction. On May 16, 2011, the court adjudicated J.G. dependent, and the court granted legal and physical custody to paternal grandmother.

---

* Former Justice specially assigned to the Superior Court.

[1] Mother voluntarily relinquished her parental rights to the children and is not part of this Appeal.

- 2 -

Both Mother and Father continued to have legal and drug difficulties. When A.G. was born in August 2014, she tested positive for Subutext. Franklin County Children and Youth Services implemented a safety plan with Mother, which required her and A.G. to live with the maternal grandmother ("Maternal Grandmother").

At some point, Father began living with paternal grandmother and J.G. On September 18, 2014, the Agency learned that Father had overdosed on Percocet, cocaine and heroin. He was hospitalized, but left the next day against medical advice.

CYS filed a dependency petition and the trial court held a shelter care hearing on September 22, 2014, and an adjudicatory hearing on October 2, 2014. J.G. was not found to be dependent, and the trial court granted physical custody to Mother, who was still residing under supervision with Maternal Grandmother and A.G. in Franklin County. Mother and Father shared legal custody and Father was to have supervised visitation.

On October 23, 2014, Father was arrested after a domestic violence incident against Mother and involving A.G. The trial court granted Mother primary and physical custody of the children. Father was charged with unlawful restraint of a minor and related charges and criminal mischief. Subsequently, he pled guilty. The parents and children were reunified as a family in December 2014.

Father was incarcerated from March 2015 to May 21, 2015, for a criminal charge of Endangering the Welfare of a Child.

On May 11, 2015, Mother was in a serious car accident. Due to the unavailability of their parents, CYS placed the children in the care of Maternal Grandmother and implemented a safety plan in which neither parent was to have any unsupervised contact with any child.

In late July 2015, the Agency received a report that both parents were using heroin in front of the children and Mother was charged with drug possession. On August 31, 2015, the trial court adjudicated the children dependent, and placed them in the kinship care of Maternal Grandmother and her husband ("Maternal Grandparents"). On November 30, 2015, Maternal Grandparents became formal kinship foster parents of the children.

The Family Service Plan created shortly after the children's adjudication contained the following goals for Father to be reunited with the children: 1) obtain stable housing; 2) obtain stable employment; 3) improve parenting education/skills; 4) visitation with the children; 5) secure safety from domestic violence; and 6) remain drug free.

On October 27, 2016, the Agency filed a petition for involuntary termination of parental rights ("TPR Petition"), as to both Mother and Father, pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). At the same time, in the dependency action, the Agency requested a change in the permanency goal from reunification to adoption.

The trial court held an evidentiary hearing on November 9, 2016 on the TPR Petition and the request to change the children's goal to adoption ("TPR Hearing"). At the beginning of the hearing, Mother voluntarily

relinquished her parental rights. *See* N.T., 11/9/16, at 4-8. The Agency presented the testimony of a counselor for J.G., and two caseworkers who worked with the family. In addition, the Agency presented the Maternal Grandmother's testimony, and moved for the admission of multiple exhibits into evidence. Father presented testimony from a social worker who had observed his prison visitations with the children, and he testified on his own behalf.

The trial court summarized its pertinent factual findings as follows:

> Father's ability to be a meaningful part of the children's lives has been marred by frequent imprisonment and drug use. He was re-incarcerated shortly following the adjudication of dependency. He remained in jail from October 15, 2015 to December 4, 2015. He was on the street for less than a month before he was imprisoned again from December 15, 2015 to July 19, 2016. Father's extensive history of incarcerations can be linked directly to his drug use.

> In addition, his drug use when not in jail has resulted in limited contact with his children. Aside from visits in prison, he saw the children only once between March and December of 2015. In fact, his only consistent visitation with the children has taken place during his incarcerations through the prison visitation program. After he was released from prison on July 19, 2016, he did not begin visiting with the children for two months. He missed two of nine weekly visits thereafter.

> Father has failed to make any meaningful progress toward reunifying with the children. He did not obtain the recommended parenting evaluation until two days prior to the [TPR Hearing]. In addition, he had done nothing to address his domestic violence toward issues. Furthermore, the domestic violence toward Mother continued after his release from prison in July of 2016.

The children are thriving in the home of their grandparents, which they share with two cousins, ages three and one. All the children get along like brothers and sisters. However, J.G. has experienced regressive behavior after visits with Father. This behavior includes "clinginess and increased opposition." He has had difficulty with transitions including his parents entering and leaving prison, and transitioning from visits with Father.

Trial Court Opinion, 1/13/17, at 2-3 (footnotes omitted).

At the close of this hearing, the trial court entered its order changing the goal for both children to adoption, and a final decree terminating Father's parental rights pursuant to Sections 2511(a)(2) and 2511(b).

**ISSUES ON APPEAL**

Father raises the following issues on appeal:

1. Whether the trial court erred in changing the goal on Father's permanency plan to adoption since Father had made substantial progress on the permanency plan goals that had been established for him?

2. Whether the trial court erred in changing the goal on Father's permanency plan to adoption since the reasons that had led to the children's placement with their maternal grandparents had been remedied?

3. Whether the trial court erred in determining that termination of Father's parental rights to the children was in the children's best interest?

Father's Brief at 4.

Because evidence regarding the permanency plan goal change and TPR petitions substantially overlap, and the legal standards to be applied are the same, we will address Father's issues together. *See In the Interest of R.J.T.*, 9 A.3d 1179, 1191 n.14 (noting that courts should combined

hearings on these two petitions since the evidence substantially overlaps and allows for faster permanency for the child).

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012).  "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.***  We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.***  We may not reverse, however, merely because the record would support a different result." ***Id.*** at 827.

We give great deference to the trial court that has first-hand observations of the parties spanning multiple hearings. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence.  ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004).  In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a).  ***See In re B.L.W.*** 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

**Termination Pursuant to 2511(a)(2)**

Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) [that] such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) [that] the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re A.S.*, 11 A.3d 472, 479 (Pa. Super. 2010) (citation omitted).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain

- 8 -

> communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations and paragraph breaks omitted). "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his parental rights may be forfeited." *A.S.*, 11 A.3d at 481 (citation omitted).

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." *In re B., N.M.*, *supra*, at 855 (citations omitted).

In the instant case, the Orphans' Court properly concluded that the Agency presented clear and convincing evidence to establish all three elements of Section 2511(a)(2). It reasoned:

> Father's repeated criminal activity, drug use, domestic violence, and lack of interest in his children have consistently caused them to be without essential parental care. They have had to rely on their grandparents for their physical and emotional wellbeing for most of their lives. The only time Father made any real effort to be a part of their lives over the past two years was when he was incarcerated. The children were brought to him in prison as part of the Agency's prison visitation program. When not in prison, he made little effort to see or support his children.
>
> [Father] has failed to remedy the conditions which have led to his failure to perform his parental duties. He is still not in a position to provide for their care. He does not have appropriate housing. Nor has he successfully addressed the issues that led to placement, including his

drug addiction, his domestic violence, or his parenting deficits.

Finally, we cannot foresee a time when the causes of his refusal and/or incapacity to parent will be remedied. His involvement with the Agency dates back to 2011. He has not made any progress addressing the issues which led to the involvement. Nor did we see any reason to believe that any real progress will be made no matter how much additional time is given.

Trial Court Opinion, 1/13/17, at 5-6 (footnotes omitted).

Father argues that the trial court erred in terminating his parental rights and changing the goal to adoption with regard to both J.G. and A.G. because he "had made substantial progress on the goals that have been established for him[.]" Father's Brief at 8. Father then reiterates his TPR Hearing testimony that "he felt that he could meet all the goals on his safety plan if he were given an additional thirty days." *Id.* at 11.

Our review of the record supports the trial court's conclusion regarding Father's progress in meeting his goals. It was for the trial court, as a matter of credibility, to determine the weight to be given Father's attempts at remediation. *In re M.G.*, *supra*. Moreover, our review of the record supports the trial court's conclusion that Father's testimony that he could meet his goals if the proceedings were delayed for another month to be unrealistic. Therefore, the record supports that trial court's conclusion that the Agency has proven by clear and convincing evidence that termination of his parental rights to J.G. and A.G. is justified pursuant to Section 2511(a)(2) of the Adoption Act.

**Termination Pursuant to Section 2511(b)**

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the orphans' court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

In cases where there is no evidence of meaningful contact between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In the instant case, the trial court determined that the evidence presented at the TPR hearing established that termination of Father's parental rights was in the best interests of the children. It stated:

> J.G.[,] now six years old, is enjoying the first stable home he's known in his short life. His therapist describes the grandparents as very caring, as well as a very positive and

consistent presence in his life. A.G. is in the only home she has every really known. The children are loved and bonded with their grandparents. The termination of Father's parental rights will enable the grandparents to adopt the children and give them the permanency they deserve. Furthermore, because of his lack of significant meaningful contact with the children, we are satisfied that they will not suffer any adverse effects from the termination of his parental rights.

Trial Court Opinion, 1/13/17, at 6 (footnote omitted).

Father cites to his own testimony and that from the social worker who supervised his prison visits with the children to assert that he enjoys a strong bond with the children and that "J.G. would be devastated by the termination of his parental rights." Father's Brief at 11. Once again, as a matter of credibility, the trial court did not find this testimony persuasive. Father also argues that "[n]o bonding assessment was performed to determine the [effect] that the termination of parental rights would have on these children who had a good relationship with [him]." **Id.** at 13. Pennsylvania case law, however, has determined that Section 2511(b) does not require a bonding analysis. **See generally**, **In the Matter of K.K.R.-S.**, 958 A.2d 529 (Pa. Super. 2008).

Thus, we conclude that the trial court did not abuse its discretion in concluding that the Agency presented clear and convincing evidence that termination of Father's parental rights is in the best interests of J.G. and A.G.

**GOAL CHANGE**

Finally, given the above, we conclude that the trial court did not err in finding that adoption is in the best interests of the Children and in changing the goal to adoption. **See R.J.T.**, 9 A.3d at 1183-84 (noting that when considering a goal change motion the court looks to the best interests of the child rather than those of the child's parents; the Agency must establish that it requested goal change option is best suited to the child's safety, protection, and physical, mental, and emotional welfare).

**CONCLUSION**

In sum, our review of the record supports the trial court's order concluding that that the Agency met its statutory burden regarding the permanency plan goal change for children to adoption, and its burden of proving by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(2) and 2511(b).

Order and Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2017

- 13 -